**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PREVALENT DISPLAY LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG DISPLAY CO., LTD., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants.* | Case No. 2:26-cv-01023<br><br>**Complaint for Patent Infringement**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Prevalent Display LLC ("Prevalent") alleges as follows against Defendants Samsung Display Co., Ltd., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. (collectively, "Defendants"):

## INTRODUCTION

1. This complaint arises from the infringement by Defendants Samsung Display Co., Ltd. ("SDC"), Samsung Electronics Co., Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA") of the following United States patents: U.S. Patent Nos. 10,902,775 (the "'775 patent"), 10,297,620 (the "'620 patent"), 11,075,226 (the "'226 patent"), and 11,450,273 (the "'273 patent") (collectively, the "Asserted Patents"). The Asserted Patents are directed to novel advances in organic light-emitting diode (OLED) display technology.

2. The ’775 and ’273 patents address a problem in OLED pixel circuits built from low-temperature polysilicon (LTPS) transistors: variations in the threshold voltages of the LTPS driving transistors cause pixels driven with the same voltage to emit different amounts of light, producing non-uniform brightness. *See* ’775 patent at 1:33-40. The ’775 and ’273 patents solve that problem with a hybrid pixel circuit that combines LTPS transistors with an oxide-semiconductor transistor having low leakage current. *See* ’775 patent at 10:10-22.

3. The ’620 and ’226 patents address a problem in the thin-film-transistor backplanes of display devices: the connecting member that extends into a contact via to reach a transistor’s gate electrode must have a larger width there to prevent peeling caused by the height difference, while its middle part can have a reduced width to keep the gap between the connecting member and the adjacent power line. *See* ’226 patent at 7:6-20.

4. Display backplanes that combine LTPS and oxide transistors, as the ’775 and ’273 patents claim, are known in the industry as “LTPO” backplanes; as one industry publication explains, LTPO is “a combination of LTPS and Oxide transistors” that “allows variable refresh rates to save power when needed”. *See, e.g.,* Bob Raikes, LTPO Is a Hot Technology – but What Is It?, Display Daily (June 4, 2021), https://displaydaily.com/ltpo-is-a-hot-technology-but-what-is-it/ (last visited Oct. 30, 2026). SDC’s LTPO technology is called “HOP,” which is short for hybrid oxide and polycrystalline silicon, reflecting that LTPO combines low-temperature polycrystalline silicon (LTPS) TFT and oxide TFT. *See, e.g.,* Gijong Lee, Samsung Display’s LTPO Tech Is Called HOP, TheElec (June 16, 2020), https://thelec.net/news/articleView.html?idxno=1060 (last visited Oct. 30, 2026). SDC states on its own website that it has commercialized “adaptive frequency” technology that “minimizes overall power consumption by automatically adjusting the display’s refresh rate from 10Hz to

120Hz depending on the usage environment". *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026).

5. SDC's OLED business is substantial: SEC reported that SDC posted KRW 9.5 trillion in consolidated revenue in the fourth quarter of 2025 alone, with small and medium display performance driven by increased smartphone demand from major customers. *See, e.g.,* Samsung Elecs. Co., Samsung Electronics Announces Fourth Quarter and FY 2025 Results (Jan. 29, 2026), https://news.samsung.com/nl/tag/fourth-quarter-and-fy-2025-results/feed (last visited Oct. 30, 2026).

6. Innolux Corporation was the original assignee of each Asserted Patent.

7. Innolux assigned all right, title, and interest in each Asserted Patent to Prevalent, and that assignment was recorded with the United States Patent and Trademark Office on April 30, 2026, at Reel/Frame 075669/0430.

8. Prevalent is the sole owner of all right, title, and interest in and to each Asserted Patent, including the right to sue for and recover damages for past, present, and future infringement, and it has standing to bring this action in its own name.

9. The Accused Instrumentalities are OLED display panels made by or for SDC that (i) use pixel driving circuits combining LTPS and oxide-semiconductor thin-film transistors, including panels described as "LTPO" or "HOP," or (ii) use the thin-film-transistor backplane structures charted in Exhibits 6 and 7, together with the products that incorporate those panels, including without limitation the Samsung Galaxy S26 Ultra and the Apple iPhone 17 Pro, and all versions and variations thereof (collectively, the "Accused Instrumentalities").

**SDC OLED Display Panels**

10. SDC has admitted in this District that it manufactures, sells, and offers to sell OLED display panels, certain of which are used in third-party consumer electronics products sold, offered for sale, or used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026).

11. SDC, SEC, and SEA have also admitted in this District that SDC manufactures and supplies displays incorporated into Samsung Galaxy smartphones, that SEC manufactures and supplies Galaxy smartphones, and that SEA supplies Galaxy smartphones in the United States. *See Solas OLED Ltd. v. Samsung Display Co.*, No. 2:19-cv-00152-JRG, Dkt. 62 ¶ 7, at 3 (E.D. Tex. Jan. 15, 2020).

12. SDC describes its "adaptive frequency" technology as "a low-power OLED panel technology that automatically adjusts your display's refresh rate according to your usage environment," which it states lowers panel operating power by up to 22%. *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026).

**Samsung Galaxy S26 Ultra**

13. Samsung's U.S. website markets the Galaxy S26 Ultra as having "the brightest and smoothest display on Galaxy," a Dynamic AMOLED 2X display with "up to 120 Hz Adaptive Refresh Rate," and offers it for purchase in the United States from $1,299.99. *See, e.g.,* Samsung, *Compare* Samsung Galaxy S26 Ultra vs Galaxy S25 Ultra, https://www.samsung.com/us/smartphones/galaxy-s26-ultra/compare/ (last visited Oct. 30, 2026).

14. Samsung offers same-day repairs, including screen replacements, on most Galaxy devices at its Samsung Experience Store in Frisco, so that replacement Galaxy display panels are sold and installed in this District. *See, e.g.,* Samsung Newsroom U.S., Discover the Galaxy: New Samsung Experience Store Opens in Frisco, TX (Feb. 18, 2022), https://news.samsung.com/us/new-frisco-tx-samsung-experience-store-open-galaxy/ (last visited Oct. 30, 2026).

15. Samsung's U.S. support site states that the Galaxy S26 series, including the 6.9-inch QHD+ Galaxy S26 Ultra, features Dynamic AMOLED 2X displays with a 120Hz adaptive refresh rate. *See, e.g.,* Samsung, *Compare* Galaxy S26, S26+, and S26 Ultra, https://www.samsung.com/us/support/answer/ANS10010342/ (captured June 20, 2026).

**Apple iPhone 17 Pro**

16. Samsung Display supplies the OLED panels for the iPhone 17 Pro, having taken over BOE's planned panel volume for the iPhone 17 Pro, and Apple remains dependent on Samsung Display for high-specification OLED manufacturing as it scales LTPO technology. *See, e.g.,* Hartley Charlton, Apple Reportedly Canceled Orders of Chinese iPhone 17 Pro Displays, MacRumors (Nov. 20, 2025), https://www.macrumors.com/2025/11/20/apple-canceled-chinese-iphone-17-pro-displays/ (last visited Oct. 30, 2026); see also [News] Samsung Reportedly to Supply M14 Panels for All iPhone 17 Models, LEDinside (Mar. 28, 2025), https://www.ledinside.com/node/view/35105 (last visited Oct. 30, 2026).

**PARTIES**

17. Plaintiff Prevalent Display LLC is a Texas limited liability company, organized under the laws of Texas, with its principal place of business at 500 North Central Expressway, Suite 500, Plano, Texas.

18. Defendant Samsung Display Co., Ltd. is a corporation, organized under the laws of the Republic of Korea, with its principal place of business at 1, Samsung-ro, Giheung-gu, Yongin-si, Gyeonggi-do, 17113, Republic of Korea.

19. Defendant Samsung Electronics Co., Ltd. is a corporation, organized under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-do, Republic of Korea.

20. Defendant Samsung Electronics America, Inc. is a corporation, organized under the laws of New York.

21. Samsung Electronics America, Inc. may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

22. SEA maintains corporate offices at 6625 Excellence Way, Plano, Texas 75023, within this District.

23. SEA is a wholly owned subsidiary of SEC that distributes Samsung consumer electronics products in the United States.

## JURISDICTION AND VENUE

24. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

25. This Court has personal jurisdiction over each Defendant. Each Defendant has committed acts of infringement in this District giving rise to this action, directly and through its subsidiaries, affiliates, distributors, and customers, by making, using, selling, offering to sell, and importing the Accused Instrumentalities, and by placing them into the stream of commerce with the knowledge and expectation that they will be purchased and used by consumers in this District. SEA maintains a regular and established place of business in Plano, Texas, within this District.

Each Defendant has therefore purposefully availed itself of the privilege of conducting business in this forum, this action arises out of and relates to those contacts, and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. In the alternative, the Court has personal jurisdiction over SDC and SEC under Federal Rule of Civil Procedure 4(k)(2), because each is a foreign corporation not subject to the general jurisdiction of any state, Prevalent's claims arise under federal law, and each has sufficient contacts with the United States as a whole.

26. Venue is proper in this District under 28 U.S.C. §§ 1400(b), 1391(c)(3).

27. SDC is a foreign corporation; it has admitted in this District that it is organized and existing under the laws of the Republic of Korea, with its principal place of business in Yongin-si, Gyeonggi-do. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 7, at 3 (E.D. Tex. July 23, 2026). Venue is therefore proper as to SDC in any judicial district, including this one, under 28 U.S.C. § 1391(c)(3). SDC also directs its panels into the United States; by its own account, it manufactures, sells, and offers to sell OLED display panels, certain of which are used in third-party consumer electronics products sold, offered for sale, or used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026). SDC has also invoked this Court's jurisdiction as a plaintiff, filing patent actions in this District against a competing display manufacturer, BOE Technology Group Co., Ltd. *See Samsung Display Co. v. BOE Tech. Grp. Co.*, No. 2:25-cv-00325 (E.D. Tex. filed Apr. 1, 2025).

28. SEC is likewise a foreign corporation, as it has admitted in this District. *See Headwater Research LLC v. Samsung Elecs. Co.*, No. 2:23-cv-00641-JRG-RSP, Dkt. 58 ¶ 55, at 9 (E.D. Tex. Jan. 17, 2025). Venue is therefore proper as to SEC under 28 U.S.C. § 1391(c)(3).

29. Venue is proper as to SEA under 28 U.S.C. § 1400(b) because SEA has committed acts of infringement in this District and has a regular and established place of business here: SEC and SEA have admitted in this District that SEA has a place of business at 6625 Excellence Way, Plano, Texas 75023. *See Headwater Research LLC v. Samsung Elecs. Co.*, No. 2:23-cv-00641-JRG-RSP, Dkt. 58 ¶ 54, at 9 (E.D. Tex. Jan. 17, 2025). As recently as May 2026, SEA again admitted that it maintains that Plano facility. *See Portus Singapore Pte Ltd. v. Samsung Elecs. Am., Inc.*, No. 2:26-cv-00143-JRG, Dkt. 14 ¶ 10, at 3 (E.D. Tex. May 22, 2026). SEA has also admitted that it offers and sells products to customers in Texas. *See Headwater Research LLC v. Samsung Elecs. Co.*, No. 2:23-cv-00641-JRG-RSP, Dkt. 58 ¶ 51, at 8 (E.D. Tex. Jan. 17, 2025). Samsung has since confirmed that it is moving SEA's U.S. headquarters from New Jersey to its Plano campus, with about 1,000 employees relocating as part of the move. *See, e.g.,* Samsung Moving U.S. Headquarters to Plano, NBC 5 Dallas-Fort Worth (June 3, 2026), https://www.nbcdfw.com/news/local/samsung-moving-u-s-headquarters-to-plano/4031494/ (last visited Oct. 30, 2026).

30. Defendants also reach consumers in this District directly; Samsung has opened a Samsung Experience Store at the Stonebriar Mall in Frisco, within this District, which offers smartphones in-store and same-day repairs on most Galaxy devices. *See, e.g.,* Samsung Newsroom U.S., Discover the Galaxy: New Samsung Experience Store Opens in Frisco, TX (Feb. 18, 2022), https://news.samsung.com/us/new-frisco-tx-samsung-experience-store-open-galaxy/ (last visited Oct. 30, 2026). Defendants make, use, sell, offer to sell, and import Accused Instrumentalities, including Galaxy S26 Ultra smartphones and smartphones incorporating SDC panels, that are sold to and used by consumers in this District.

## COUNT 1 – INFRINGEMENT OF THE ’775 PATENT

31. Prevalent incorporates by reference the allegations of paragraphs 1 through 30 as if fully set forth herein and further alleges as follows:

32. On January 26, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 10,902,775, titled “Driving circuit of active-matrix organic light-emitting diode with hybrid transistors.”

33. Prevalent owns all right, title, and interest in and to the ’775 patent, including the exclusive right to enforce it, to sublicense it, and to recover all past, present, and future damages for its infringement.

34. The claims of the ’775 patent were duly issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

35. The claims of the ’775 patent are patent eligible under 35 U.S.C. § 101.

36. The claims of the ’775 patent are not directed to abstract ideas and recite technical solutions to the technical problem of threshold-voltage variation among low-temperature polysilicon (LTPS) driving transistors, which causes equal driving voltages to produce unequal pixel currents and non-uniform display brightness, as the specification describes:

> That is, due to the polycrystalline process, the threshold voltages Vt of different LTPS P-type driving transistors are varied owing to different locations of the LTPS P-type driving transistors. Accordingly, when driving voltages of the same value are inputted to two P-type driving transistors of the same size, they cannot output currents of the same value, resulting in a brightness uniformity (mura) or poor brightness problem.

’775 patent, 1:33-40.

37. The written description of the ’775 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38. SDC, SEC, and SEA have directly infringed and continue to directly infringe (literally and equivalently) the ’775 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing the Accused Instrumentalities, including the SDC OLED display panel in the Samsung Galaxy S26 Ultra and the SDC OLED display panel in the Apple iPhone 17 Pro, which infringe one or more claims of the ’775 patent, without a license or permission from Prevalent.

39. **Exhibit 1** is a true and correct copy of the ’775 patent. **Exhibit 5** provides a description of the Accused Instrumentalities and a chart showing an example of how they infringe at least one claim of the ’775 patent, which Prevalent provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

40. SDC, SEC, and SEA also knowingly and intentionally induce and contribute to infringement of the ’775 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, since at least the date of service of this Complaint, SDC, SEC, and SEA have had knowledge of the ’775 patent and of the infringing nature of the Accused Instrumentalities. Despite this knowledge, SDC, SEC, and SEA continue to encourage and instruct customers and end users to use the Accused Instrumentalities in an infringing manner.

41. SDC induces infringement by its customers, including SEC, SEA, and Apple, by manufacturing, selling, and offering to sell OLED display panels that SDC knows will be incorporated into smartphones that are imported into, sold in, and used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026). SDC supplies the OLED panels

for the Apple iPhone 17 Pro, a smartphone sold throughout the United States. *See, e.g.,* Hartley Charlton, Apple Reportedly Canceled Orders of Chinese iPhone 17 Pro Displays, MacRumors (Nov. 20, 2025), https://www.macrumors.com/2025/11/20/apple-canceled-chinese-iphone-17-pro-displays/ (last visited Oct. 30, 2026); see also [News] Samsung Reportedly to Supply M14 Panels for All iPhone 17 Models, LEDinside (Mar. 28, 2025), https://www.ledinside.com/node/view/35105 (last visited Oct. 30, 2026). SDC also markets its OLED panel technology directly to device makers in the United States, including at a private exhibition for its global customers during CES 2026 in Las Vegas, where it promoted panels using oxide thin-film-transistor technology for variable refresh rates from 1Hz to 120Hz. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

42. SEC and SEA induce infringement by U.S. retailers, carriers, and consumers by advertising the Galaxy S26 Ultra and its display, including as "the brightest and smoothest display on Galaxy" with "up to 120 Hz Adaptive Refresh Rate," and by inviting U.S. consumers to "Buy now". *See, e.g.,* Samsung, *Compare* Samsung Galaxy S26 Ultra vs Galaxy S25 Ultra, https://www.samsung.com/us/smartphones/galaxy-s26-ultra/compare/ (last visited Oct. 30, 2026). Samsung also instructs Galaxy users, through its U.S. support site, to select the "Adaptive" Motion smoothness setting, which "will dynamically adjust the screen refresh rate, up to 120 Hz," and thereby to operate the accused display panels in the low-refresh, low-leakage mode that the claimed hybrid pixel circuit enables. *See, e.g.,* Samsung, How to Adjust Refresh Rate Options on Your Galaxy Phone or Tablet, https://www.samsung.com/us/support/answer/ANS10003396/ (captured June 20, 2026).

43. On information and belief, SDC, SEC, and SEA also provide ongoing technical support to their customers and end users and encourage them to use the Accused Instrumentalities in an infringing manner.

44. SDC, SEC, and SEA's customers and end users directly infringe the '775 patent under 35 U.S.C. § 271(a) by importing, selling, offering to sell, and using smartphones and other devices that incorporate the accused SDC display panels, in the manner SDC, SEC, and SEA instruct and intend, and SDC, SEC, and SEA's inducement causes that direct infringement.

45. SDC, SEC, and SEA's manufacturers, developers, and distributors also directly infringe the '775 patent when they make, use, sell, offer for sale, and import the Accused Instrumentalities, and SDC, SEC, and SEA's inducement causes that direct infringement.

46. Thus, with full knowledge of the '775 patent and knowledge that the acts they induce constitute infringement of the '775 patent, SDC, SEC, and SEA have knowingly and intentionally induced and continue to induce infringement of the '775 patent.

47. SDC, SEC, and SEA also contribute to the infringement of the '775 patent by selling, offering for sale, or importing into the United States the Accused Instrumentalities, which incorporate the accused SDC OLED display panels, and the LTPO pixel driving circuits within them, which combine LTPS transistors with an oxide-semiconductor transistor connected to the gate of the driving transistor. That component constitutes a material part of the inventions claimed in the '775 patent, is especially made or especially adapted to infringe the '775 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

48. For example, in **Exhibit 5**, that component is especially made or adapted to infringe the '775 patent. On information and belief, including a reasonable investigation conducted on behalf of Prevalent into the uses of the Accused Instrumentalities and a review of SDC, SEC, and

SEA's marketing and instructional materials, the hybrid LTPS/oxide pixel driving circuits of the accused SDC panels have no substantial non-infringing use: each such pixel circuit is formed in the panel backplane in the claimed configuration and cannot be operated in any other configuration, it performs no function other than driving the pixel's organic light-emitting diode through the claimed arrangement of transistors, and a reasonable investigation into the uses of the Accused Instrumentalities identified no other use for it.

49. The LTPO pixel driving circuits of the accused SDC panels are especially made and adapted to practice the claimed invention: an LTPO backplane is a combination of LTPS and oxide transistors, a combination that allows variable refresh rates to save power. *See, e.g.,* Bob Raikes, LTPO Is a Hot Technology – but What Is It?, Display Daily (June 4, 2021), https://displaydaily.com/ltpo-is-a-hot-technology-but-what-is-it/ (last visited Oct. 30, 2026). SDC itself describes its adaptive-frequency technology as a low-power OLED panel technology that automatically adjusts the display's refresh rate and lowers panel operating power by up to 22%. *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026). SDC also states that pairing its OLED panels with oxide thin-film-transistor technology provides a variable refresh rate from 1Hz to 120Hz that reduces power consumption. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

50. That component is known by SDC, SEC, and SEA to be especially made or especially adapted for use in practicing the claims of the '775 patent. As set forth above, SDC,

SEC, and SEA have knowledge of the ’775 patent and instruct customers and end users to use the Accused Instrumentalities to practice those claims.

51. SDC, SEC, and SEA have also willfully infringed the ’775 patent.

52. Defendants have had knowledge of the ’775 patent, and of their infringement of it, since at least the filing and service of this Complaint. Thus, as of that date, SDC, SEC, and SEA have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers would constitute infringement of the ’775 patent.

53. Despite that knowledge, Defendants have continued to make, use, sell, offer to sell, and import the Accused Instrumentalities without taking any steps to avoid infringing the ’775 patent, and that continued infringement after notice is deliberate and willful.

54. SDC, SEC, and SEA’s infringement of the ’775 patent has been and continues to be willful, entitling Prevalent to enhanced damages under 35 U.S.C. § 284.

55. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, SDC, SEC, and SEA have injured Prevalent and are liable for infringement of the ’775 patent pursuant to 35 U.S.C. § 271.

56. As a result of SDC, SEC, and SEA’s infringement of the ’775 patent, Prevalent is entitled to monetary damages in an amount adequate to compensate for SDC, SEC, and SEA’s infringement, but in no event less than a reasonable royalty for the use made of the invention by SDC, SEC, and SEA, together with interest and costs as fixed by the Court.

57. Prevalent’s claims for damages are not limited under 35 U.S.C. § 287, at least because, on information and belief, there are no unmarked patented articles subject to a duty to mark under the ’775 patent. In any event, Defendants have had actual notice of the ’775 patent and of their infringement since at least the filing and service of this Complaint.

**COUNT 2 – INFRINGEMENT OF THE ’620 PATENT**

58. Prevalent incorporates by reference the allegations of paragraphs 1 through 30 as if fully set forth herein and further alleges as follows:

59. On May 21, 2019, the United States Patent and Trademark Office issued U.S. Patent No. 10,297,620, titled “Display device.”

60. Prevalent owns all right, title, and interest in and to the ’620 patent, including the exclusive right to enforce it, to sublicense it, and to recover all past, present, and future damages for its infringement.

61. The claims of the ’620 patent were duly issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

62. The claims of the ’620 patent are patent eligible under 35 U.S.C. § 101.

63. The claims of the ’620 patent are not directed to abstract ideas and recite technical solutions to the technical problem of peeling, poor electrical contact, and electrostatic damage of the conductive member that connects to a thin-film transistor gate electrode through a contact via in a display backplane, as the specification describes:

> When the connecting member 1181 is designed to have a larger width at the opening 1161 of the metal layer 116, the contact area of the connecting member 1181 at the opening 1161 can be increased. Therefore, the peeling of the connecting member 1181 at the opening 1161 due to the height difference can be prevented to ensure the good electrical connection between the connecting member 1181 and the gate electrode 114.

’620 patent, 6:19-26.

64. The written description of the ’620 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65. SDC, SEC, and SEA have directly infringed and continue to directly infringe (literally and equivalently) the ’620 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing the Accused Instrumentalities, including the SDC OLED display panel in the Apple iPhone 17 Pro, which infringe one or more claims of the ’620 patent, without a license or permission from Prevalent.

66. **Exhibit 2** is a true and correct copy of the ’620 patent. **Exhibit 6** provides a description of the Accused Instrumentalities and a chart showing an example of how they infringe at least one claim of the ’620 patent, which Prevalent provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

67. SDC, SEC, and SEA also knowingly and intentionally induce and contribute to infringement of the ’620 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, since at least the date of service of this Complaint, SDC, SEC, and SEA have had knowledge of the ’620 patent and of the infringing nature of the Accused Instrumentalities. Despite this knowledge, SDC, SEC, and SEA continue to encourage and instruct customers and end users to use the Accused Instrumentalities in an infringing manner.

68. SDC induces infringement by its customers, including SEC, SEA, and Apple, by manufacturing, selling, and offering to sell OLED display panels that SDC knows will be incorporated into smartphones that are imported into, sold in, and used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026). SDC supplies the OLED panels for the Apple iPhone 17 Pro, a smartphone sold throughout the United States. *See, e.g.,* Hartley

Charlton, Apple Reportedly Canceled Orders of Chinese iPhone 17 Pro Displays, MacRumors (Nov. 20, 2025), https://www.macrumors.com/2025/11/20/apple-canceled-chinese-iphone-17-pro-displays/ (last visited Oct. 30, 2026); see also [News] Samsung Reportedly to Supply M14 Panels for All iPhone 17 Models, LEDinside (Mar. 28, 2025), https://www.ledinside.com/node/view/35105 (last visited Oct. 30, 2026). SDC also markets its OLED panel technology directly to device makers in the United States, including at a private exhibition for its global customers during CES 2026 in Las Vegas, where it promoted panels using oxide thin-film-transistor technology for variable refresh rates from 1Hz to 120Hz. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

69. On information and belief, SDC, SEC, and SEA also provide ongoing technical support to their customers and end users and encourage them to use the Accused Instrumentalities in an infringing manner.

70. SDC, SEC, and SEA's customers and end users directly infringe the '620 patent under 35 U.S.C. § 271(a) by importing, selling, offering to sell, and using Apple iPhone 17 Pro smartphones and other devices that incorporate the accused SDC display panels, in the manner SDC, SEC, and SEA instruct and intend, and SDC, SEC, and SEA's inducement causes that direct infringement.

71. SDC, SEC, and SEA's manufacturers, developers, and distributors also directly infringe the '620 patent when they make, use, sell, offer for sale, and import the Accused Instrumentalities, and SDC, SEC, and SEA's inducement causes that direct infringement.

72. Thus, with full knowledge of the ’620 patent and knowledge that the acts they induce constitute infringement of the ’620 patent, SDC, SEC, and SEA have knowingly and intentionally induced and continue to induce infringement of the ’620 patent.

73. SDC, SEC, and SEA also contribute to the infringement of the ’620 patent by selling, offering for sale, or importing into the United States the Accused Instrumentalities, which incorporate the accused SDC OLED display panels and their thin-film-transistor backplanes, which include the claimed gate-electrode and connecting-member structures. That component constitutes a material part of the inventions claimed in the ’620 patent, is especially made or especially adapted to infringe the ’620 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

74. For example, in **Exhibit 6**, that component is especially made or adapted to infringe the ’620 patent. On information and belief, including a reasonable investigation conducted on behalf of Prevalent into the uses of the Accused Instrumentalities and a review of SDC, SEC, and SEA’s marketing and instructional materials, the claimed backplane structures of the accused SDC panels have no substantial non-infringing use: they are fixed in the panel when it is manufactured, they cannot be used except as part of the accused display device, and a reasonable investigation into the uses of the Accused Instrumentalities identified no other use for them.

75. The accused SDC display panels are especially made for use in the smartphones into which they are incorporated; SDC describes its smartphone OLED panel technology as a low-power OLED panel technology that automatically adjusts the display’s refresh rate and lowers panel operating power by up to 22%. *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026). SDC also states that it pairs its OLED panels with oxide thin-film-transistor technology to provide a variable

refresh rate from 1Hz to 120Hz that reduces power consumption. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

76. That component is known by SDC, SEC, and SEA to be especially made or especially adapted for use in practicing the claims of the ’620 patent. As set forth above, SDC, SEC, and SEA have knowledge of the ’620 patent and instruct customers and end users to use the Accused Instrumentalities to practice those claims.

77. SDC, SEC, and SEA have also willfully infringed the ’620 patent.

78. Defendants have had knowledge of the ’620 patent, and of their infringement of it, since at least the filing and service of this Complaint. Thus, as of that date, SDC, SEC, and SEA have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers would constitute infringement of the ’620 patent.

79. Despite that knowledge, Defendants have continued to make, use, sell, offer to sell, and import the Accused Instrumentalities without taking any steps to avoid infringing the ’620 patent, and that continued infringement after notice is deliberate and willful.

80. SDC, SEC, and SEA’s infringement of the ’620 patent has been and continues to be willful, entitling Prevalent to enhanced damages under 35 U.S.C. § 284.

81. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, SDC, SEC, and SEA have injured Prevalent and are liable for infringement of the ’620 patent pursuant to 35 U.S.C. § 271.

82. As a result of SDC, SEC, and SEA’s infringement of the ’620 patent, Prevalent is entitled to monetary damages in an amount adequate to compensate for SDC, SEC, and SEA’s

infringement, but in no event less than a reasonable royalty for the use made of the invention by SDC, SEC, and SEA, together with interest and costs as fixed by the Court.

83. Prevalent's claims for damages are not limited under 35 U.S.C. § 287, at least because, on information and belief, there are no unmarked patented articles subject to a duty to mark under the '620 patent. In any event, Defendants have had actual notice of the '620 patent and of their infringement since at least the filing and service of this Complaint.

## COUNT 3 – INFRINGEMENT OF THE '226 PATENT

84. Prevalent incorporates by reference the allegations of paragraphs 1 through 30 as if fully set forth herein and further alleges as follows:

85. On July 27, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,075,226, titled "Display device."

86. Prevalent owns all right, title, and interest in and to the '226 patent, including the exclusive right to enforce it, to sublicense it, and to recover all past, present, and future damages for its infringement.

87. The claims of the '226 patent were duly issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

88. The claims of the '226 patent are patent eligible under 35 U.S.C. § 101.

89. The claims of the '226 patent are not directed to abstract ideas and recite technical solutions to the technical problem of the competing demands that the conductive member connected to a thin-film transistor gate be wide enough at its contact via to avoid peeling, yet narrow enough elsewhere to keep its spacing from adjacent power-supply lines, as the specification describes:

> However, unlike the region where the first terminal part 1181a and the second terminal part 1181b disposed thereon, the region where the middle part 1181c

> disposed thereon does not have the height difference; therefore, the middle part 1181c is not required to have larger width. Hence, the width of the middle part 1181c can be reduced, and the gap between the middle part 1181c and the power supply circuit 1182 can be maintained.

’226 patent, 7:12-20.

90. The written description of the ’226 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

91. SDC, SEC, and SEA have directly infringed and continue to directly infringe (literally and equivalently) the ’226 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing the Accused Instrumentalities, including the SDC OLED display panel in the Samsung Galaxy S26 Ultra and the SDC OLED display panel in the Apple iPhone 17 Pro, which infringe one or more claims of the ’226 patent, without a license or permission from Prevalent.

92. **Exhibit 3** is a true and correct copy of the ’226 patent. **Exhibit 7** provides a description of the Accused Instrumentalities and a chart showing an example of how they infringe at least one claim of the ’226 patent, which Prevalent provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

93. SDC, SEC, and SEA also knowingly and intentionally induce and contribute to infringement of the ’226 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, since at least the date of service of this Complaint, SDC, SEC, and SEA have had knowledge of the ’226 patent and of the infringing nature of the Accused Instrumentalities. Despite this knowledge, SDC, SEC,

and SEA continue to encourage and instruct customers and end users to use the Accused Instrumentalities in an infringing manner.

94. SDC induces infringement by its customers, including SEC, SEA, and Apple, by manufacturing, selling, and offering to sell OLED display panels that SDC knows will be incorporated into smartphones that are imported into, sold in, and used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026). SDC supplies the OLED panels for the Apple iPhone 17 Pro, a smartphone sold throughout the United States. *See, e.g.,* Hartley Charlton, Apple Reportedly Canceled Orders of Chinese iPhone 17 Pro Displays, MacRumors (Nov. 20, 2025), https://www.macrumors.com/2025/11/20/apple-canceled-chinese-iphone-17-pro-displays/ (last visited Oct. 30, 2026); see also [News] Samsung Reportedly to Supply M14 Panels for All iPhone 17 Models, LEDinside (Mar. 28, 2025), https://www.ledinside.com/node/view/35105 (last visited Oct. 30, 2026). SDC also markets its OLED panel technology directly to device makers in the United States, including at a private exhibition for its global customers during CES 2026 in Las Vegas, where it promoted panels using oxide thin-film-transistor technology for variable refresh rates from 1Hz to 120Hz. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

95. SEC and SEA induce infringement by U.S. retailers, carriers, and consumers by advertising the Galaxy S26 Ultra and its display, including as "the brightest and smoothest display on Galaxy" with "up to 120 Hz Adaptive Refresh Rate," and by inviting U.S. consumers to "Buy now". *See, e.g.,* Samsung, *Compare* Samsung Galaxy S26 Ultra vs Galaxy S25 Ultra,

https://www.samsung.com/us/smartphones/galaxy-s26-ultra/compare/ (last visited Oct. 30, 2026). Samsung also instructs Galaxy users, through its U.S. support site, to select the "Adaptive" Motion smoothness setting, which "will dynamically adjust the screen refresh rate, up to 120 Hz," and thereby to operate the accused display panels. *See, e.g.,* Samsung, How to Adjust Refresh Rate Options on Your Galaxy Phone or Tablet, https://www.samsung.com/us/support/answer/ANS10003396/ (captured June 20, 2026).

96. On information and belief, SDC, SEC, and SEA also provide ongoing technical support to their customers and end users and encourage them to use the Accused Instrumentalities in an infringing manner.

97. SDC, SEC, and SEA's customers and end users directly infringe the '226 patent under 35 U.S.C. § 271(a) by importing, selling, offering to sell, and using smartphones and other devices that incorporate the accused SDC display panels, in the manner SDC, SEC, and SEA instruct and intend, and SDC, SEC, and SEA's inducement causes that direct infringement.

98. SDC, SEC, and SEA's manufacturers, developers, and distributors also directly infringe the '226 patent when they make, use, sell, offer for sale, and import the Accused Instrumentalities, and SDC, SEC, and SEA's inducement causes that direct infringement.

99. Thus, with full knowledge of the '226 patent and knowledge that the acts they induce constitute infringement of the '226 patent, SDC, SEC, and SEA have knowingly and intentionally induced and continue to induce infringement of the '226 patent.

100. SDC, SEC, and SEA also contribute to the infringement of the '226 patent by selling, offering for sale, or importing into the United States the Accused Instrumentalities, which incorporate the accused SDC OLED display panels and their thin-film-transistor backplanes, which include the claimed gate-electrode and connecting-member structures. That component

constitutes a material part of the inventions claimed in the ’226 patent, is especially made or especially adapted to infringe the ’226 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

101. For example, in **Exhibit 7**, that component is especially made or adapted to infringe the ’226 patent. On information and belief, including a reasonable investigation conducted on behalf of Prevalent into the uses of the Accused Instrumentalities and a review of SDC, SEC, and SEA’s marketing and instructional materials, the claimed backplane structures of the accused SDC panels have no substantial non-infringing use: they are fixed in the panel when it is manufactured, they cannot be used except as part of the accused display device, and a reasonable investigation into the uses of the Accused Instrumentalities identified no other use for them.

102. The accused SDC display panels are especially made for use in the smartphones into which they are incorporated; SDC describes its smartphone OLED panel technology as a low-power OLED panel technology that automatically adjusts the display’s refresh rate and lowers panel operating power by up to 22%. *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026). SDC also states that it pairs its OLED panels with oxide thin-film-transistor technology to provide a variable refresh rate from 1Hz to 120Hz that reduces power consumption. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

103. That component is known by SDC, SEC, and SEA to be especially made or especially adapted for use in practicing the claims of the ’226 patent. As set forth above, SDC,

SEC, and SEA have knowledge of the ’226 patent and instruct customers and end users to use the Accused Instrumentalities to practice those claims.

104. SDC, SEC, and SEA have also willfully infringed the ’226 patent.

105. Defendants have had knowledge of the ’226 patent, and of their infringement of it, since at least the filing and service of this Complaint. Thus, as of that date, SDC, SEC, and SEA have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers would constitute infringement of the ’226 patent.

106. Despite that knowledge, Defendants have continued to make, use, sell, offer to sell, and import the Accused Instrumentalities without taking any steps to avoid infringing the ’226 patent, and that continued infringement after notice is deliberate and willful.

107. SDC, SEC, and SEA’s infringement of the ’226 patent has been and continues to be willful, entitling Prevalent to enhanced damages under 35 U.S.C. § 284.

108. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, SDC, SEC, and SEA have injured Prevalent and are liable for infringement of the ’226 patent pursuant to 35 U.S.C. § 271.

109. As a result of SDC, SEC, and SEA’s infringement of the ’226 patent, Prevalent is entitled to monetary damages in an amount adequate to compensate for SDC, SEC, and SEA’s infringement, but in no event less than a reasonable royalty for the use made of the invention by SDC, SEC, and SEA, together with interest and costs as fixed by the Court.

110. Prevalent’s claims for damages are not limited under 35 U.S.C. § 287, at least because, on information and belief, there are no unmarked patented articles subject to a duty to mark under the ’226 patent. In any event, Defendants have had actual notice of the ’226 patent and of their infringement since at least the filing and service of this Complaint.

## COUNT 4 – INFRINGEMENT OF THE ’273 PATENT

111. Prevalent incorporates by reference the allegations of paragraphs 1 through 30 as if fully set forth herein and further alleges as follows:

112. On September 20, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,450,273, titled “Driving circuit of active-matrix organic light-emitting diode with hybrid transistors.”

113. Prevalent owns all right, title, and interest in and to the ’273 patent, including the exclusive right to enforce it, to sublicense it, and to recover all past, present, and future damages for its infringement.

114. The claims of the ’273 patent were duly issued by the United States Patent and Trademark Office and are presumed by statute to be valid.

115. The claims of the ’273 patent are patent eligible under 35 U.S.C. § 101.

116. The claims of the ’273 patent are not directed to abstract ideas and recite technical solutions to the technical problem of threshold-voltage variation among low-temperature polysilicon (LTPS) driving transistors, which causes equal driving voltages to produce unequal pixel currents and non-uniform display brightness, as the specification describes:

> That is, due to the polycrystalline process, the threshold voltages Vt of different LTPS P-type driving transistors are varied owing to different locations of the LTPS P-type driving transistors. Accordingly, when driving voltages of the same value are inputted to two P-type driving transistors of the same size, they cannot output currents of the same value, resulting in a brightness uniformity (mura) or poor brightness problem.

’273 patent, 1:33-40.

117. The written description of the ’273 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

118. SDC, SEC, and SEA have directly infringed and continue to directly infringe (literally and equivalently) the ’273 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and importing the Accused Instrumentalities, including the SDC OLED display panel in the Samsung Galaxy S26 Ultra and the SDC OLED display panel in the Apple iPhone 17 Pro, which infringe one or more claims of the ’273 patent, without a license or permission from Prevalent.

119. **Exhibit 4** is a true and correct copy of the ’273 patent. **Exhibit 8** provides a description of the Accused Instrumentalities and a chart showing an example of how they infringe at least one claim of the ’273 patent, which Prevalent provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

120. SDC, SEC, and SEA also knowingly and intentionally induce and contribute to infringement of the ’273 patent in violation of 35 U.S.C. §§ 271(b)-(c). For example, since at least the date of service of this Complaint, SDC, SEC, and SEA have had knowledge of the ’273 patent and of the infringing nature of the Accused Instrumentalities. Despite this knowledge, SDC, SEC, and SEA continue to encourage and instruct customers and end users to use the Accused Instrumentalities in an infringing manner.

121. SDC induces infringement by its customers, including SEC, SEA, and Apple, by manufacturing, selling, and offering to sell OLED display panels that SDC knows will be incorporated into smartphones that are imported into, sold in, and used in the United States. *See Wuhan China Star Optoelectronics Semiconductor Display Tech. Co. v. Samsung Display Co.*, No. 2:26-cv-00228-JRG, Dkt. 104 ¶ 10, at 3 (E.D. Tex. July 23, 2026). SDC supplies the OLED panels

for the Apple iPhone 17 Pro, a smartphone sold throughout the United States. *See, e.g.,* Hartley Charlton, Apple Reportedly Canceled Orders of Chinese iPhone 17 Pro Displays, MacRumors (Nov. 20, 2025), https://www.macrumors.com/2025/11/20/apple-canceled-chinese-iphone-17-pro-displays/ (last visited Oct. 30, 2026); see also [News] Samsung Reportedly to Supply M14 Panels for All iPhone 17 Models, LEDinside (Mar. 28, 2025), https://www.ledinside.com/node/view/35105 (last visited Oct. 30, 2026). SDC also markets its OLED panel technology directly to device makers in the United States, including at a private exhibition for its global customers during CES 2026 in Las Vegas, where it promoted panels using oxide thin-film-transistor technology for variable refresh rates from 1Hz to 120Hz. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

122. SEC and SEA induce infringement by U.S. retailers, carriers, and consumers by advertising the Galaxy S26 Ultra and its display, including as "the brightest and smoothest display on Galaxy" with "up to 120 Hz Adaptive Refresh Rate," and by inviting U.S. consumers to "Buy now". *See, e.g.,* Samsung, *Compare* Samsung Galaxy S26 Ultra vs Galaxy S25 Ultra, https://www.samsung.com/us/smartphones/galaxy-s26-ultra/compare/ (last visited Oct. 30, 2026). Samsung also instructs Galaxy users, through its U.S. support site, to select the "Adaptive" Motion smoothness setting, which "will dynamically adjust the screen refresh rate, up to 120 Hz," and thereby to operate the accused display panels in the low-refresh, low-leakage mode that the claimed hybrid pixel circuit enables. *See, e.g.,* Samsung, How to Adjust Refresh Rate Options on Your Galaxy Phone or Tablet, https://www.samsung.com/us/support/answer/ANS10003396/ (captured June 20, 2026).

123. On information and belief, SDC, SEC, and SEA also provide ongoing technical support to their customers and end users and encourage them to use the Accused Instrumentalities in an infringing manner.

124. SDC, SEC, and SEA's customers and end users directly infringe the '273 patent under 35 U.S.C. § 271(a) by importing, selling, offering to sell, and using smartphones and other devices that incorporate the accused SDC display panels, in the manner SDC, SEC, and SEA instruct and intend, and SDC, SEC, and SEA's inducement causes that direct infringement.

125. SDC, SEC, and SEA's manufacturers, developers, and distributors also directly infringe the '273 patent when they make, use, sell, offer for sale, and import the Accused Instrumentalities, and SDC, SEC, and SEA's inducement causes that direct infringement.

126. Thus, with full knowledge of the '273 patent and knowledge that the acts they induce constitute infringement of the '273 patent, SDC, SEC, and SEA have knowingly and intentionally induced and continue to induce infringement of the '273 patent.

127. SDC, SEC, and SEA also contribute to the infringement of the '273 patent by selling, offering for sale, or importing into the United States the Accused Instrumentalities, which incorporate the accused SDC OLED display panels, and the LTPO pixel driving circuits within them, which combine LTPS transistors with an oxide-semiconductor transistor connected to the gate of the driving transistor. That component constitutes a material part of the inventions claimed in the '273 patent, is especially made or especially adapted to infringe the '273 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

128. For example, in **Exhibit 8**, that component is especially made or adapted to infringe the '273 patent. On information and belief, including a reasonable investigation conducted on behalf of Prevalent into the uses of the Accused Instrumentalities and a review of SDC, SEC, and

SEA's marketing and instructional materials, the hybrid LTPS/oxide pixel driving circuits of the accused SDC panels have no substantial non-infringing use: each such pixel circuit is formed in the panel backplane in the claimed configuration and cannot be operated in any other configuration, it performs no function other than driving the pixel's organic light-emitting diode through the claimed arrangement of transistors, and a reasonable investigation into the uses of the Accused Instrumentalities identified no other use for it.

129. The LTPO pixel driving circuits of the accused SDC panels are especially made and adapted to practice the claimed invention: an LTPO backplane is a combination of LTPS and oxide transistors, a combination that allows variable refresh rates to save power. *See, e.g.,* Bob Raikes, LTPO Is a Hot Technology – but What Is It?, Display Daily (June 4, 2021), https://displaydaily.com/ltpo-is-a-hot-technology-but-what-is-it/ (last visited Oct. 30, 2026). SDC itself describes its adaptive-frequency technology as a low-power OLED panel technology that automatically adjusts the display's refresh rate and lowers panel operating power by up to 22%. *See, e.g.,* Samsung Display, OLED Display, https://www.samsungdisplay.com/eng/tech/oled-display.jsp (captured July 13, 2026). SDC also states that pairing its OLED panels with oxide thin-film-transistor technology provides a variable refresh rate from 1Hz to 120Hz that reduces power consumption. *See, e.g.,* Samsung Display, Samsung Display Showcases OLED Innovations for the AI Era at CES 2026 (Jan. 4, 2026), https://www.samsungdisplay.com/eng/media/news/detail/ssdsNews-260104.jsp (captured July 13, 2026).

130. That component is known by SDC, SEC, and SEA to be especially made or especially adapted for use in practicing the claims of the '273 patent. As set forth above, SDC,

SEC, and SEA have knowledge of the ’273 patent and instruct customers and end users to use the Accused Instrumentalities to practice those claims.

131. SDC, SEC, and SEA have also willfully infringed the ’273 patent.

132. Defendants have had knowledge of the ’273 patent, and of their infringement of it, since at least the filing and service of this Complaint. Thus, as of that date, SDC, SEC, and SEA have known, or have been willfully blind to the fact, that making, using, offering to sell, and selling the Accused Instrumentalities to their customers would constitute infringement of the ’273 patent.

133. Despite that knowledge, Defendants have continued to make, use, sell, offer to sell, and import the Accused Instrumentalities without taking any steps to avoid infringing the ’273 patent, and that continued infringement after notice is deliberate and willful.

134. SDC, SEC, and SEA’s infringement of the ’273 patent has been and continues to be willful, entitling Prevalent to enhanced damages under 35 U.S.C. § 284.

135. By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, SDC, SEC, and SEA have injured Prevalent and are liable for infringement of the ’273 patent pursuant to 35 U.S.C. § 271.

136. As a result of SDC, SEC, and SEA’s infringement of the ’273 patent, Prevalent is entitled to monetary damages in an amount adequate to compensate for SDC, SEC, and SEA’s infringement, but in no event less than a reasonable royalty for the use made of the invention by SDC, SEC, and SEA, together with interest and costs as fixed by the Court.

137. Prevalent’s claims for damages are not limited under 35 U.S.C. § 287, at least because, on information and belief, there are no unmarked patented articles subject to a duty to mark under the ’273 patent. In any event, Defendants have had actual notice of the ’273 patent and of their infringement since at least the filing and service of this Complaint.

**JURY DEMAND**

138. Prevalent demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

**RELIEF REQUESTED**

Prevalent prays for the following relief:

A. A judgment in favor of Prevalent that Defendants have infringed, directly and indirectly, each of the Asserted Patents;

B. A judgment and order requiring Defendants to pay Prevalent its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the Asserted Patents, as provided under 35 U.S.C. § 284;

C. A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Prevalent, including without limitation pre-judgment and post-judgment interest;

D. A judgment and order requiring Defendants to pay Prevalent compulsory ongoing royalties for any continuing infringement after the date of judgment, as determined by the Court;

E. A judgment that Defendants' infringement has been willful, and an award of enhanced damages under 35 U.S.C. § 284;

F. A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Prevalent's reasonable attorneys' fees and costs; and

G. Any and all other relief to which Prevalent may be entitled.

Dated: November 12, 2026

Respectfully submitted,

*/s/ Reza Mirzaie*
Reza Mirzaie, CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Neil A. Rubin, CA State Bar No. 250761
Email: nrubin@raklaw.com
James S. Tsuei, CA State Bar No. 285530
Email: jtsuei@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Prevalent Display LLC**